UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

| | |
|---|---|
| RICHARD D. MEADOW, | **COMPLAINT** |
| Plaintiff, | Civil Case No. |
| v. | |
| | JURY TRIAL DEMANDED |
| FIFTH ON THE PARK CONDO, LLC, | ECF CASE |
| Defendant. | |

------------------------------------------------------------- X

Plaintiff, Richard D. Meadow, by his attorneys, The Lanier Law Firm PLLC, for his complaint herein affirms as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought to rescind an agreement to purchase a condominium unit.  This action includes a claim for promissory estoppel, a claim for breach of implied covenant of good faith and fair dealing under New York's common law, and a claim brought pursuant to the Interstate Land Sales Full Disclosure Act, as amended, 15 U.S.C. § 1701 *et seq.*, ("ILSFDA" or "The Act"), including without limitation under the provisions of 15 U.S.C. §§ 1703, 1709 and 1719 of The Act and the regulations promulgated thereto, 24 C.F.R. 1710.1, *et seq.* (1991) ("Regulations"), to rescind an agreement to purchase a condominium unit at 1485 Fifth Avenue, New York, New York 10035, within the condominium property known as Fifth on the Park Condominium (the "Condominium")[1] and to recover the purchase deposit tendered to Developer and other damages, as Developer cannot meet any of the exemptions under The Act and never met the registration requirements of The Act or delivered

---

[1] Condominium or unit properties are "lots" within meaning of The Act. *Beauford v. Helmsley*, 740 F. Supp. 201, 209-10 (S.D.N.Y.1990).

1

a HUD Property Report to the Purchaser before its representative signed the subject Purchase Agreement.

## SUBJECT MATTER JURISDICTION

2.    One of the plaintiff's causes of action arises under federal law, specifically, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701, *et seq*.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1719 to rescind a sale and purchase agreement for real property located within this district.

## PERSONAL JURISDICTION

3.    Personal jurisdiction over Defendant is proper under §§ 301 and 302 of the State of New York's Civil Practice Law & Rules, Rule 4 of the Federal Rules of Civil Procedure and under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America.

## VENUE

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c), as, upon information and belief, (1) Defendant transacts substantial and continuous business within this district; (2) Developer offered the contract at issue in this case within this district; (3) both of the parties executed the contract at issue in this case within this district; (4) the real property at issue in this case is located within this district, and (5) the claims alleged in this complaint accrued within this district.

## THE PARTIES

5.    Plaintiff Richard D. Meadow has an address at 18 Windmill Lane, Scarsdale, New York 10583.

6.    Upon information and belief, Defendant Fifth on the Park Condo, LLC (the "Developer") is a limited liability company organized and existing under the laws of the State

of New York with its registered address c/o K&R Realty Management Inc., 37 West 65th Street, New York, New York 10023.

7.      The Developer is deemed a "developer" within the meaning of 15 U.S.C. § 1701 (5), as it, directly and/or indirectly, developed, marketed, offered for sale and/or participated in the offering for sale and/or contracted for sale of units at the Condominium.

## STATEMENT OF FACTS

### The Facts Concerning Plaintiff's ILSA Claim

8.      The Developer is the sponsor of the Condominium.

9.      The Developer is authorized to sell units in the Condominium.

10.      The Condominium is comprised of more than 99 units offered for sale.

11.      At the time that the subject purchase agreement between the parties that is the subject of this action (the "Purchase Agreement") was executed, the units in the Condominium were offered for sale as part of a common promotional plan.

12.      Pursuant to the Condominium's New York Offering Plan, the Condominium consists of 160 residential units.

13.      All of the units listed in the paragraph above were offered for sale or lease to prospective purchasers, including the Plaintiff, by the Developer.

14.      The Developer continues to offer units in the Condominium for sale or lease to prospective purchasers or renters.

15.      The Developer, in its campaign to sell the units in the Condominium, has employed several instrumentalities of interstate commerce, including the United States Postal Service, electronic means of data and voice communication, and non-governmental overnight courier services, such as United Parcel Service and/or Federal Express.

16.    In its construction of the Condominium, the Developer has purchased goods and services which originated outside the State of New York and were transported to, and incorporated into, the Condominium, which is located in this district.

17.    At all relevant times, the Developer has used the website www.5thonthepark.com to market units in the Condominium for sale and/or lease and to respond to inquiries about the Condominium.

18.    On or about May 30, 2008, Plaintiff and Developer signed the Purchase Agreement, a copy of which is attached hereto as Exhibit "A", the contents of which are incorporated by reference herein, to purchase Unit No. 23E and a parking easement at the Condominium (the "Unit") for $1,675,200.00.

19.    Pursuant to the Purchase Agreement, Plaintiff paid the Developer a deposit of $167,520.00, which is ten percent (10%) of the purchase price of the Unit (the "Deposit").

20.    In connection with the offering and sale of condominium units (which are not otherwise exempt pursuant to 15 U.S.C. § 1702), 15 U.S.C. §§ 1703 (a) (l) (A), 1704 and 1705 require developers to file a Statement of Record ("Statement of Record") with the Department of Housing and Urban Development ("HUD") containing numerous required disclosures and additional information and attaching specifically required documentation in support thereof.

21.    In order to be exempt from complying with the Act, the Developer would need to meet one of the exemptions set forth in 15 U.S.C. § 1702 (a) or § 1702 (b).

22.    The Developer has not qualified, nor can it now qualify, for any of the exemptions set forth in 15 U.S.C. § 1702 (a) or § 1702 (b).

23.    At the time the Purchase Agreement was executed, the Condominium had over ninety-nine (99) units offered for sale under a common promotional plan.

24.    At the time the Purchase Agreement was executed, the Unit was not physically

4

habitable and usable for the purpose for which it was purchased.

25.    At the time the Purchase Agreement was executed, a Certificate of Occupancy had not been filed for the Unit.

26.    At the time the Purchase Agreement was executed, the Unit was not ready for occupancy.

27.    The Purchase Agreement did not contain a provision unconditionally obligating the Developer to complete the Unit for the Plaintiff within two years (or less) of the execution of the Purchase Agreement.

28.    The Purchase Agreement was not evidence of indebtedness secured by a mortgage.

29.    The Purchase Agreement was not for the sale of a security in a real estate investment trust.

30.    The Purchase Agreement was not for the sale of a cemetery lot.

31.    The Developer is not a governmental entity.

32.    One form of purchase agreement for the Condominium was submitted as an exhibit to the Condominium's New York Offering Plan.

33.    At the time the Purchase Agreement was executed, the Developer only had one form of purchase agreement for units at the Condominium.

34.    The Plaintiff did not make a personal inspection of the Unit prior to signing the Purchase Agreement, among other reasons, because neither the Unit nor the Condominium was fully constructed.

35.    The Purchase Agreement did not contain any provision requiring the delivery of a unit deed to the Plaintiff within 180 days of the execution of the Purchase Agreement.

36.    The Plaintiff did not receive a unit deed within 180 days of the execution of the

Purchase Agreement.

37.    The Developer has used the mail to respond to inquiries about the Condominium.

38.    The Developer has used the mail to collect payments from purchasers of units within the Condominium.

39.    The sale of units in the Condominium was not restricted solely to residents of the State of New York.

40.    Prior to the signing of the Purchase Agreement, the Developer failed to seek an exemption order from HUD regarding any exemption available under The Act.

41.    The Unit is not at least twenty acres.

42.    The mobile home exemption under 15 U.S.C. § 1702 is not applicable to a condominium.

43.    Prior to the execution of the Purchase Agreement, the Developer never obtained a substantial compliance exemption from HUD.

44.    Prior to the execution of the Purchase Agreement, the Developer never obtained a no-action letter from HUD.

45.    Since the Developer was not exempt from The Act, it was therefore required to properly register the Condominium with HUD through the submission of a Statement of Record and provide a HUD Property Report to the Plaintiff before the signing of the Purchase Agreement.

46.    15 U.S.C. § 1703 (b) provides that any contract or agreement for the sale of a lot not exempt under 15 U.S.C. § 1702 may be revoked at the option of the purchaser until midnight of the seventh day following the signing of such contract or agreement, "and such contract or agreement shall clearly provide this right."

47.     The Purchase Agreement did not contain the provision set forth in the preceding paragraph.

48.     15 U.S.C. § 1703 (c) provides in pertinent part that a contract of sale of a lot, not exempt under 15 U.S.C. § 1702, may be revoked at any time within two years of signing at the option of the purchaser where a Statement of Record is not on file with HUD and a developer has not provided the Property Report required by 15 U.S.C. § 1703 (a) (l) (B) and 24 C.F.R. § 1710.3.

49.     Developer never filed a Statement of Record with HUD for the Condominium.

50.     Developer never provided a HUD Property Report to Plaintiff.

51.     15 U.S.C. § 1703 (d) provides that a contract of sale of a lot, not exempt under 15 U.S.C. § 1702, may be revoked at any time within two years of the signing if the contract does not contain (1) the legal description of the unit in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction where the Unit is located;[2] (2) certain notices regarding a purchaser's right to cure in the event of default;[3] and (3) certain limitations on damages in the event of the purchaser's default as required by the Act.[4]

52.     The Purchase Agreement did not contain any of the provisions set forth in the preceding paragraph.

53.     In the offering and sale of condominium units in the Condominium, the Developer did not comply with additional sections of The Act and participated in activities proscribed by § 1703.

---

[2] 15 U.S.C. § 1703 (d) (l).
[3] 15 U.S.C. § 1703 (d) (2).
[4] 15 U.S.C. § 1703 (d) (3).

54.     Based on the breach by the Developer of §§ 1703 (a) - (d) and other sections of

The Act, and the right of action afforded under § 1709 and other sections of The Act, the

Plaintiff has an unequivocal right under The Act to rescind the Purchase Agreement and receive

a full refund of all monies paid to the Developer, plus interest, costs, attorney's fees and other

costs associated with the purchase of the Unit.[5]

55.     Since the Developer failed to fulfill any of these requirements, it has violated

The Act and the Plaintiff is not obligated to complete the purchase of the Unit and is afforded a

right of rescission, as well as other remedies under The Act.

56.     On December 15, 2009, Plaintiff notified the Developer in writing that it elected

to exercise its statutory right to rescind the Purchase Agreement.

57.     Plaintiff's written notice to the Developer of its election and demand to rescind

the Purchase Agreement was timely.

58.     Defendant's counsel responded to Plaintiff's letter of December 15, 2009,

stating:

> "We are co-counsel to Hartman & Craven LLP ("Hartman")
> with respect to condominium sale transactions at the
> referenced Condominium.   This letter shall serve as a
> response to your letter dated December 15, 2009, wherein
> you purport to exercise your client's alleged right to rescind
> the   Purchase   Agreement   dated   May   30,   2008
> ("Agreement"), based on the fact that Sponsor failed to
> comply with the requirements of the Interstate Land Sales
> Full Disclosure Act ("ILSA"), 15 U.S.C. §1701, et seq.
> Please be advised that the Condominium is exempt from the
> registration requirements of ILSA by reason of one or more
> exemptions, which is why the Condominium was not
> registered with the Department of Housing and Urban
> Development."

See Exhibit "B".

---

[5] 15 U.S.C. § 1709 (a)-(c).

59.     To date, the Developer has failed to acknowledge Plaintiff's right to rescind the Purchase Agreement and return Plaintiff's deposit monies, plus all accrued interest.

60.     Plaintiff is entitled to, without limitation, revocation and rescission of the Purchase Agreement, and damages, including, but not limited to, return of all earnest monies, interest, attorney's fees and expenses for this action and cost incurred, other damages and contribution from all who are liable in such manner and to such extent and to such further relief as provided under 15 U.S.C. § 1709.

### The Facts Concerning Plaintiff's Claims for Promissory Estoppel Claim & Breach of Implied Covenant of Fair Dealing Under New York's Common Law

61.     In August 2008, Plaintiff began discussions with his landlord of more than 20 years to surrender Plaintiff's rent stabilized apartment, because Plaintiff anticipated closing on the apartment he contracted for with the Defendant on or around January 31, 2009.

62.     In August 2008, Plaintiff received a Surrender and License Agreement requiring Plaintiff to surrender his rent stabilized apartment on January 31, 2009.

63.     Shortly after receiving the Surrender and License Agreement, on September 4, 2008, Plaintiff wrote an email to the Defendant stating, "I wanted to check on the status of the building as I am negotiating with my landlord to get out of my lease." See Exhibit "C".

64.     Thirteen minutes after receiving the Plaintiff's email, the Defendant – with full knowledge that Plaintiff was in need of closing details so that Plaintiff could negotiate the surrender of his leased apartment – wrote back, "Your floor should begin closings in February." See Exhibit "C".

65.     Thereafter, Plaintiff relied to his detriment on the Defendant's responsive promise, and Plaintiff negotiated with his landlord to surrender the premises of his greater than 20-year tenancy as of February 1, 2009.

66.    As late January 2009, approached, and it became clear that Defendant was not in a position to close on Plaintiff's apartment in February, as Defendant previously assured in response to Plaintiff's request for a closing date so that Plaintiff could negotiate the termination of his leased apartment, Plaintiff sought to remain in his leased tenancy as a holdover tenant.

67.    Ultimately, however, Plaintiff was sued by his former landlord to surrender the apartment as he had contracted to do.

68.    As a result, Plaintiff was required to move out of the premises on February 6, 2009, despite the fact that Defendant was not in a position to close on the condominium that Plaintiff contracted to purchase.

69.    Because of Defendant's false promise, Plaintiff was required to move into a month-to-month tenancy at a rental rate that far exceeded his surrendered rent stabilized apartment.

70.    On March 23, 2009, Plaintiff again wrote to Defendant and asked, "When will we close?" See Exhibit "D".

71.    Defendant wrote back, "Building looks great, and we should have the [temporary certificate of occupancy] w/in the next few weeks, and then we will begin to schedule the closings." See Exhibit "D".

72.    As more months passed without the prospect of closing on his condominium unit, Plaintiff could no longer rely on the false promises of the Defendant as Plaintiff had already suffered significant monetary damages.

73.    Plaintiff mitigated his damages by ending the wasteful rental payments and purchasing a residence.

## FIRST CLAIM FOR RELIEF:

## Violation of the Interstate Land Sales Full Disclosure Act - 15 U.S.C. § 1701, et seq.

74.     Plaintiff hereby incorporates, adopts and reavers by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing paragraphs of this Complaint.

75.     Plaintiff has exercised his right of rescission within two years of the signing of the Purchase Agreement.

76.     Pursuant to 15 U.S.C. § 1703 (e) and 1709 (c) and other applicable sections, Plaintiff is entitled to the return of his down payment, together with interest and attorney's fees and costs.

## SECOND CLAIM FOR RELIEF:

## Promissory Estoppel

77.     Plaintiff hereby incorporates, adopts and reavers by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing paragraphs of this Complaint.

78.     Plaintiff made Defendant aware of Plaintiff's need to negotiate a surrender of Plaintiff's rental apartment based upon the date that Defendant would be in a position to close on the condominium Plaintiff contracted to purchase.

79.     Defendant made a gratuitous promise that the Defendant should reasonably expected to induce action or forbearance of a definite and substantial character on the part of the Plaintiff.

80.     Plaintiff justifiably relied on the Defendant's promise that closings on Plaintiff's floor would begin in February 2009.

81.    As a result of Plaintiff's justifiable reliance on the Defendant's promise, Plaintiff suffered a substantial detriment, losing significant sums of money by surrendering his leased apartment and having to obtain a different and far more expensive residence to place his family as he awaited the Defendant's inexcusably delayed closing on Plaintiff's contract.

82.    Closings did not begin on Plaintiff's floor as promised in February 2009, and Defendant was not in a position to close with Plaintiff until October 2009, at best.

83.    As more months passed without the prospect of closing on his condominium unit, Plaintiff could no longer rely on the false promises of the Defendant as Plaintiff had already suffered significant monetary damages.

84.    Plaintiff mitigated his damages by ending the wasteful rental payments and purchasing a residence.

85.    Injustice can only be avoided by enforcing the Defendant's promise and granting Plaintiff the return of his down payment, together with interest and attorney's fees and costs.

### THIRD CLAIM FOR RELIEF:

### Breach of Implied Covenant of Good Faith and Fair Dealing Under New York's Common Law

86.    Plaintiff hereby incorporates, adopts and reavers by reference, as if set forth specifically herein, each and every allegation set forth in the foregoing paragraphs of this Complaint.

87.    The actual or implied contract between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing under New York law.  Defendant breached that covenant.

88.    Defendant's actions described above have at all times relevant to this action been willful and/or knowing.

89.    As a direct and proximate result of Defendant's actions alleged above, Plaintiff has suffered significant monetary damages.

## PRAYER FOR RELIEF

90.    **WHEREFORE**, Plaintiff prays for judgment and declarations against the Defendant as follows:

a.    Rescission of the Purchase Agreement and the return of his deposit monies of $167,520.00, plus accrued interest thereon;

b.    that Plaintiff be awarded compensatory damages;

c.    that Plaintiff be awarded reasonable attorney's fees[6];

d.    that Plaintiff recover the costs of litigation[7];

e.    that Plaintiff be awarded pre- and post-judgment interest;

f.    that Plaintiff be awarded any other damages allowable by any applicable statute; and,

g.    that Plaintiff recovers such further relief to which it may be entitled.

Dated: New York, New York
        April 13, 2010

THE LANIER LAW FIRM PLLC

By: _____
Evan M. Janush, Esq.
126 East 56th Street, 6th Floor
New York, NY 10022
Phone: 212.421.2800
Fax: 212.421.2878
emj@lanierlawfirm.com

Attorneys for Plaintiff

---

[6] Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to U.S.C. § 1709 (c).
[7] *Id.*

13