# EXHIBIT A

# FIFTH ON THE PARK CONDOMINIUM

## PURCHASE AGREEMENT

Agreement dated <u>May 30, 2008</u> between Fifth on the Park Condo, LLC, and a New York limited liability company, having its offices c/o K&R Realty Management Inc., 37 West 65th Street, New York, New York 10023, referred to in this Agreement as the Seller or the Sponsor, and <u>Richard D. Meadow</u> residing at <u>85 East End Avenue, Apartment 8D. New York, New York, 10028</u> referred to in this Agreement (collectively, if applicable) as the Purchaser.

| | | |
|---|---|---|
| (i) | Purchase Price of Unit | $1,635,200 .00 |
| (ii) | Purchase Price of Parking Easement | $ 40,000 .00 |
| (iii) | Total Purchase Price | $ 1,675,200 .00 |
| (iv) | Down Payment | <u>$ 167,520 .00</u> |
| (iv) | Balance Due at Closing | $1,507,680 .00 |

1. <u>Agreement to Purchase</u>. As Purchaser (sometimes hereinafter referred to as "I" or "me" or "my"), I agree to purchase from you (sometimes hereinafter referred to as "seller" or "your"), and as seller you agree to sell to me, the Condominium Unit in Fifth on the Park Condominium, at 1485 Fifth Avenue in the Borough of Manhattan, County, City and State of New York (the "Premises"), designated as Unit No. <u>23E</u>, together with a <u>0.61</u>% undivided interest in the common elements of the Condominium for the Total Purchase Price shown above. I am delivering to you my check for the Down Payment shown above [and a parking easement as described in the Offering Plan (defined below) and in Section 2 hereof]. This check is accepted by you subject to collection. When you deliver to me the deed for my Unit [and the parking easement](at the closing of title), I shall pay to you or anyone you designate the Balance Due at Closing shown above by unendorsed personal certified check(s) or official bank check(s) in either event drawn on banks which are members of the New York Clearing House Association.

2. <u>Delivery of the Deed</u>. Subject to the recording of the Declaration of Condominium and obtaining at least a temporary certificate of occupancy for the Unit, the Closing of Title shall take place either at a particular time and on a particular business day designated by you, or by appointment during a period of days designated by you, in either event on at least thirty days prior written notice (but not prior to the forty fifth day after the date of this Agreement) at the offices of Hartman & Craven LLP, 488 Madison Avenue, New York, New York 10022. You shall be entitled to a reasonable adjournment of the Closing of Title (i.e., up to twelve months) as set forth in Paragraph 22 of this Agreement. If I am not ready to close title on or before the Closing Deadline defined in the next sentence, any adjournment beyond the Closing Deadline granted at my request shall be upon the condition that all adjustments, including mortgage interest, shall be made as of the date originally fixed for the closing of title, including interest on the Purchase Price at the rate of

twelve (12%) percent per annum from the Closing Deadline to the actual closing date. For purposes of the preceding sentence, the term "Closing Deadline" is defined as follows: (a) if you set a particular date for Closing of Title, then the Closing Deadline will be the seventh (7th) day after that particular date; and (b) if, instead of a particular date, you require that I make an appointment for Closing of Title during a designated period of days, then the Closing Deadline will be the later to occur of: (i) the last day of that period of days, or (ii) the seventh (7th) day after the first day of that period of days. Nothing contained in this Agreement shall require you to grant any adjournment not reasonable in duration. The deed delivered to me shall be a standard type of deed known as a bargain and sale deed with covenant against grantor's acts, and containing the covenant required by Section 13 of the Lien Law. If my total Purchase Price set forth at the beginning of the Purchase Agreement includes the purchase of a Parking Easement my deed will include a non-exclusive easement to gain access to and park or store a motor vehicle in the Commercial Unit of the Condominium which is identified and used as a parking garage (the one primarily located on the lower level of the Building and referred to as the "Garage Unit") subject to (i) encroachments and easements in favor of all other Unit owners that purchase such non-exclusive parking easements, (ii) such reasonable rules and regulations as may be promulgated by the Owner of the Garage Unit, and (iii) said Garage Unit Owner's continuing right to inspect, maintain and/or repair the Garage Unit. I am aware that the Sponsor reserves the right up until the first Unit closing to withdraw its offer to sell Parking Easements. Where Sponsor exercises such right any amounts paid toward any Parking Easement will be refunded or credited toward the purchase of any given Unit in connection with which such Parking Easement was being purchased. In such event, each Purchaser will have a space made available to them at a market rate of $325.00. I shall pay the New York City and New York State Transfer Taxes on such deed. When you deliver the deed, I shall sign the power of attorney in favor of the Board of Managers of the Condominium in the form included as an Exhibit in the Condominium Offering Plan for the residential units at the Premises.

3.  Receipt of Documents. You have delivered to me, at least three (3) full business days prior to my signing this Agreement, and I have read and agree to be bound by the condominium offering plan for the residential units at the Premises together with the _16_ amendments thereto, the proposed forms of Declaration of Condominium (the "Declaration") and By-Laws (both included as exhibits to the Offering Plan), Schedules, Plans and the Exhibits contained in the offering plan (collectively, the "Offering Plan" or the "Plan"), all of which are made part of this Agreement as if they were set forth in full in this Agreement. I acknowledge that I am purchasing a Unit in a Condominium and that, except as stated in this Agreement (and as set forth in the Offering Plan), I have not relied on any representations or other statements of any kind or nature made by you or other persons, including but not limited to any representations relating to the description, size or dimensions of the Unit or rooms, or the estimated common charges or other expenses of the Condominium.

4.  Marketable Title. You shall convey to me good and marketable title (subject to the terms of the Declaration and By-Laws as filed and of the Offering Plan), free and clear of all liens and encumbrances except the lien of the mortgage applied for by me and except as set forth in the section of the Offering Plan entitled Closing of Title to Units; and such title as Fidelity National Title Insurance Company or any other title company licensed to do business in New York State shall approve and insure for mortgagee and/or fee title insurance. If I order fee title insurance, it shall be

purchased at my own cost and expense.

5. <u>Closing Expenses and Adjustments</u>. I further agree to pay at the closing of title the actual cost of title examination, cost of mortgage title insurance, private mortgage insurance, if applicable, attorneys' fees for preparation of the documents necessary for the mortgage loan, any other fees charged in connection with my mortgage loan, New York City and New York State Transfer Taxes, recording charges for the deed, power of attorney in favor of the Board of Managers, and mortgage documents, the fees of my counsel and the following fees of your counsel: A closing legal fee of $2,000 or $2,750 (if the purchase if financed) for preparing the closing documents, reviewing any loan documents and providing any documents of information to Purchaser's lender, if any; An additional fee of $500 to a purchaser who schedules his Unit closing then adjourns it without giving Sponsor's counsel at least three (3) business days prior written notice of such adjournment; an additional $500 if the closing takes place other than at the law office of Hartman & Craven LLP, (or $1,000 of the closing takes place outside of Manhattan). I agree to make all other adjustments (i.e., mortgage recording tax) and pay at the closing of title an amount equal to one month's common charges attributable to my Unit representing my share of the initial working capital for the Condominium. In addition, I shall adjust with you as of 11:59 PM on the day preceding the date of the Closing of Title all real estate taxes and any common charges assessed during the month in which title closes or established as a reserve based upon the last bill received. In addition, I agree to make all other adjustments (i.e., mortgage tax) and pay all closing costs as enumerated in the section of the Offering Plan entitled Closing Costs and Adjustments. Any errors or omissions in computing apportionments at closing shall be corrected. Payment shall be made promptly to the party owed. This provision shall survive closing of title and delivery of the Deed for six months.

6. <u>No Financing Contingency</u>. I understand that none of my obligations under this Agreement are contingent or conditional upon my ability to obtain a loan, and that, therefore, if I do not obtain a loan and I am unable otherwise to procure the monies needed by me to pay the Balance Due at Closing (as referred to at the beginning of this Agreement), I will be in default under this Agreement whereby I may lose/forfeit my Down Payment hereunder.

7. <u>Escrow or Bonding of Down Payment</u>. You shall hold all Down Payment monies you receive from me, directly or through your agents or employees, in an escrow account until actually employed in consummation of the transaction. At your sole discretion, however, you may secure a bond or letter of credit in my favor in an amount equal to the full Down Payment and Additional Payment monies received. If you post such a bond or letter of credit you will file an amendment to the Plan with the New York State Attorney General before posting the bond or letter of credit.

If no bond or letter of credit is posted, such Down Payment funds shall be held as trust funds pursuant to Sections 352-e(2)(b) and 352-h of the General Business Law, in a special account entitled "Hartman & Craven LLP Attorney Trust for Fifth on the Park" in Citibank, N.A., One Court Square – 460 Park Avenue, New York, New York 10022. The signature of a partner of Hartman & Craven LLP, as the attorney for the Seller, shall be required to withdraw any of such funds. Such funds shall be payable to you upon the closing of title to the Unit covered by the Purchase Agreement or upon the posting of a bond or letter of credit in my favor as described above. Interest, if any, earned on such funds shall be turned over or assigned to me at the closing.

In the event of my default under this Purchase Agreement, which default continues for fifteen (15) days after notice of such default from you to me, all such funds, including interest, if any, earned thereon, shall be released to you from such account as liquidated damages and thereafter neither you nor I shall have any rights or obligations against or to the other. In no event shall such liquidated damages exceed ten (10%) percent of the total Purchase Price of the Unit, plus the cost of Special Order Work (as hereinafter defined), if any, together with interest, if any, earned on such sums.

All funds received by you shall be handled in accordance with the provisions of Sections 352-e(2)(b) and 352-h of the General Business Law and shall be employed by you only in connection with the consummation of the Plan.

I understand and acknowledge that in the event a conflict should arise over the disposition of the escrow funds, the Escrow Agent may represent you in such dispute. I hereby also authorize the Escrow Agent to disburse my payments held in escrow account to you or at your direction at closing. I understand that the Escrow Agent is only responsible for the duties assigned to it in the Offering Plan.

8. <u>Your Rights If I Fail to Keep My Promises and Agreements</u>. All sums I pay you on account of this Agreement and the reasonable expense of the examination of title to the Unit shall constitute liens on the Unit. Such liens shall not continue, however, after default by me under this Agreement. You shall have the right to keep my Down Payment and all interest earned on it and the cost of any Special Order Work (as hereinafter defined) if (a) I do not pay the Total Purchase Price for my Unit when due or (b) if when you offer to deliver to me the deed to my Unit I do not then sign any of the documents referred to in the Plan which I am required to sign or (c) if I fail to keep any other promise contained in this Agreement. Your rights shall apply whether or not construction of my Unit has begun or has been completed.

The foregoing notwithstanding, before you shall have the right to keep my Down Payment and the interest earned on it and the cost of Special Order Work, you must first send me a notice stating that you intend to cancel this Agreement and describing each promise that you think I did not keep under this Agreement. If I do not cause each of these promises to be kept within fifteen (15) days after your notice is sent, you may keep my Down Payment and all interest earned on it and the cost of Special Order Work. After that, neither you nor I shall have any further obligations under this Agreement; this Agreement shall be considered canceled without any further action by either of us; and you shall have the right to sell my Unit to any other person.

9. <u>Recording of Condominium Declaration</u>. I understand that the Declaration and By-Laws for the Condominium was/will be recorded by you in the Office of the Register of the City of New York, New York County, prior to the Closing of Title to the first Residential Unit as set forth in the Offering Plan, and that you filed/will file with the Declaration when it is/was recorded a verified statement of a registered architect or licensed professional engineer certifying that the plans filed fully and fairly depict the layout, location, Unit designation and approximate dimensions of my Unit as built. The Declaration and By-Laws, are/will be substantially in the form of the Declaration and By-Laws set forth in the Offering Plan as amended and any changes in such documents shall not have a material adverse effect upon me.

10. **Seller's Inability to Deliver Deed Cancellation of Purchase Agreement.** It is understood and agreed that in the event you are unable to deliver to me a deed to the Unit in accordance with this Agreement because of your inability to complete the construction of the Unit or the filing/recording of the Declaration in accordance with the Offering Plan and any amendments to the Plan, then you shall immediately notify me in writing and this Agreement will terminate. In such case, the sole liability between us shall be the return to me of the Down Payment together with interest, if any, earned thereon.

11. **Agreement Subject to Mortgages.** I understand that you have borrowed or may, in the future, borrow money to construct the Units of the Condominium and will give to your lender a construction or development loan mortgage. I recognize and agree that all terms and provisions of this Purchase Agreement are and shall be subject and subordinate to the lien of any building loan mortgage on the condominium property heretofore or hereafter made and any advances heretofore or hereafter made thereon, and any payments or expenses already made or incurred or which may hereafter be made or incurred pursuant to the terms thereof, to the full extent thereof without the execution of any further legal documents by me. This subordination shall apply whether such advances are voluntary or involuntary and whether made in accordance with the building loan schedule of payments or accelerated thereunder by virtue of the lender's right to make advances before they become due in accordance with the schedule of payments. You shall satisfy all such mortgages or obtain a release of the Unit I am purchasing from the lien of such mortgages, however, at or prior to the closing date, except for the mortgage loan I am obtaining on the Unit, if any, whether the same be by extension, assumption, consolidation or otherwise.

12. **Construction of Unit by Seller.** You agree, at your own cost and expense to complete my Unit substantially in accordance with the architects report which appears in the Offering Plan and with the requirements as to materials and workmanship of the New York City Buildings Department, and you further agree that when it is completed it shall be in substantial accordance with the plans as filed with the Buildings Department. You also agree to perform in my Unit any items of work specifically agreed to by you and described in either an Exhibit or attachment to this Agreement or in a separate written document executed or approved after execution of this Agreement (the "Special Order Work"). In the event my Unit is substantially completed as aforesaid and provided a temporary or permanent Certificate of Occupancy is issued, I agree to close title to my Unit and accept a letter agreement from you in which you promise to complete all items unfinished at the time of closing within sixty (60) days of the closing of title, weather permitting.

If a temporary Certificate of Occupancy is obtained, you agree to perform all work necessary and obtain a permanent Certificate of Occupancy within two (2) years of the closing of title or prior to expiration of the temporary Certificate of Occupancy (as such expiration may be extended), whichever is sooner. In the event a permanent Certificate of Occupancy for the Building containing my Unit has not been issued as of the date of Closing of Title, you will continue to hold all monies previously deposited and being held in escrow for said Unit pursuant to Section 352-e(2)(b) of the General Business Law unless your engineer or architect certifies that a lesser amount will be reasonably necessary to complete the work needed to obtain a permanent Certificate of Occupancy. Any sum of money exceeding the amount certified by your engineer or architect will be released to

you. Upon the issuance of the permanent Certificate of Occupancy, such escrow deposit will be released to you without my consent or the consent of any other party.

Alternatively, you may deposit with an escrow agent an unconditional, irrevocable letter of credit or post a surety bond in the amount certified by your engineer or architect. Prior to posting such bond or letter of credit, you will amend the Plan.

13.     Personal Property Included in the Sale: Excluded Items.  All articles of personal property, fixtures and equipment described in the Offering Plan for the Condominium Unit being purchased by me are included in this sale, and they shall be delivered free and clear of all liens and encumbrances except the lien of the mortgage, if any, applied for by me. The decorative lighting fixtures, paints, carpeting, built-ins, special landscaping, wallpapers, furniture and furnishings exhibited in the Model Units, except as otherwise specifically set forth in this Agreement or in the Offering Plan, are for display purposes only and are not included in this sale.

14.     Selection of Colors and Other Features.  It is further agreed that whenever I have the right to make a selection of colors, fixtures and/or materials as set forth in the Offering Plan, I shall do so within seven (7) days after written demand from you. In the event I fail to make such selection within such period, you shall have the right to use your own judgment in the selection of such colors, fixtures and materials and I shall accept your selection. Such written demand shall be by ordinary mail addressed to me at the address set forth at page one of this Agreement.

15.     Seller's Right to Make Changes.  I understand that you have the right to make changes or substitutions of materials or equipment (including appliances and fixtures) for items referred to in the Offering Plan or in the building plans, provided any such substitute materials or equipment are not of substantially inferior quality or design.

16.     Warranties.  At the closing of title you shall deliver the certificates and warranties for appliances and equipment in the Unit which are in your possession and transferable to me or to the Condominium. Your liability under the manufacturers' warranties covering heating units, air conditioning units, appliances and roofing are limited solely to the extent that such warranties are delivered to you, transferable to me or to the Condominium and then only as against such manufacturer.

17.     Lack of Labor/Materials; Seller's Right to Cancel.  I understand that you may either: (a) adjourn the Closing for up to twelve months; or (b) cancel this Agreement by forwarding a check in refund of the full amount paid by me, together with interest, if any, earned thereon, in either event together with a notice in writing, addressed to me, at my address set forth at page one of this Agreement, in the event of the occurrence of either of the following: (1) that any governmental bureau, department or subdivision imposes restrictions on the manufacture, sale, distribution and/or use of materials necessary in the construction of the Units and such restriction shall prevent or significantly delay you from obtaining such materials from your regular suppliers or from using them in the construction and/or completion of the Units; or (2) that you are unable or having a significant delay to obtain materials from your usual sources or complete the contemplated construction due to strikes, lockouts, war, military operations and requirements, national emergencies, the installation of

public utilities is restricted or curtailed, or other force majeure. I acknowledge that except as otherwise specifically provided in the Plan, I shall not be excused from paying the full Purchase Price, without credit or set-off, and shall have no claim against you for damages or losses, in the event that the Closing Date occurs substantially later than the projected date, or the time to complete or to close title to the Unit is delayed or postponed by you as herein provided.

18.  Risk of Loss. The risk of loss or damage to the Unit by fire or any other cause until the delivery of the deed is assumed by you.

19.  Existence of Liens - Not Objection to Title. The existence of unpaid taxes or liens of any kind at the time of title closing shall not constitute an objection to title, provided you shall deposit a sufficient amount of money with or give other assurance to a title company so that said company shall be willing to either omit same as exceptions or insure against collection of same from my property. I agree that you may pay and discharge any liens and encumbrances upon the property which are not otherwise provided for in this Agreement out of the monies to be paid by me at the time of Closing Title.

20.  Possession Prior to Closing. It is expressly understood and agreed that I may not take possession of my Unit prior to the time of the delivery of the deed and full compliance by me with the terms of this Agreement. I understand that if I violate this provision you shall have the right to remove me from the premises as a squatter and intruder by summary proceedings. Upon my unauthorized possession, I shall be deemed in default of this Agreement. At your option and upon such election, all monies paid by me shall belong to you as liquidated damages. It is further understood and agreed that you shall not be responsible for damage or loss to any property belonging to me whether same is delivered to the property on or after the closing of title.

21.  Execution of Required Documents, etc. I agree to deliver to you all documents and to perform all acts required by you to carry out the provisions of the Offering Plan, establish the Condominium and conform to the provisions of all applicable laws and regulations, including, without limitation, execution and delivery of the deed, power of attorney, and requisite transfer tax forms. This paragraph shall survive delivery of the deed.

22.  Right of Rescission. The Sponsor expects the first closing of a Unit to occur on or about  09/15/2008 . As Purchaser you will be offered rescission if Sponsor is unable (unless such inability arises or results from the purchaser's default) to close under a Purchase Agreement within twelve (12) months after the anticipated date of first closing of a unit.

23.  Options Ordered. Any extras or changes ordered by me, whether reflected in an Exhibit or attachment to this Agreement or ordered after execution of this Agreement will be deemed Special Order Work and must be signed for by me, must be approved by you, and must be paid for in full at the time of such order or at any other time payment for same is requested by you. If for any reason you fail to perform any such Special Order Work in accordance with the work order, your sole responsibility to me is to return the monies paid by me for such extras.

24.  Binding Nature of Purchase Agreement, Assignability; Notice. I agree that this

Agreement is binding upon us, our respective heirs, executors, administrators and/or assigns. I agree that I will not record, give, sell or assign my rights in this Agreement without your prior written consent. Unless another method is provided for in this Agreement, any notice to be given to each other shall be in writing and sent by hand delivery or by certified mail return receipt requested to the address shown on page one of this Agreement or to such address as either of us may later designate to the other in writing.

25. <u>Amendments to Offering Plan</u>. I understand that you reserve the right to amend the Plan and any of the exhibits thereto at any time and from time to time and that I will receive a copy of each such amendment, and in that event this Agreement shall be deemed to refer to the Plan as amended; provided, however, that if an amendment made prior to my Unit Closing makes any adverse material changes, I may elect within fifteen (15) days after receipt of each such amendment to cancel this Agreement by written notice to you. In the event of such cancellation, any payments made by me hereunder shall be returned to me without interest, unless the monies are held in an interest-bearing account in which event they shall be returned with the interest accrued, and I shall have no further rights or obligations hereunder. If I do not elect to cancel this Agreement as set forth above, this Agreement shall remain in full force and effect.

26. <u>Purchasers - Agents for Each Other</u>. If two or more persons are named as the Purchaser herein, any one of them is hereby made agent for the other(s) in all matters of any and every kind or nature affecting the premises herein or this Agreement (including, without limitation, agent for receiving and accepting notices and service of process).

27. <u>Broker</u>. I hereby represent that I have dealt with no broker in connection with this sale other than  <u>Griffin Real Estate Group & Halstead Property Group</u>  . I agree to indemnify you against any claim brought by any other broker for brokerage commissions based upon my acts.

28. <u>Definitions</u>. The term "I" shall be read as "we" if more than one person is a purchaser in which case our obligations shall be considered joint and several.

29. <u>Entire Agreement</u>. This Agreement states the entire understanding between us and we shall not be bound by any oral or other representations and/or agreements except as otherwise may be set forth in the Offering Plan. Any conflict between this Purchase Agreement and the Offering Plan shall be resolved in favor of the Plan.

30. <u>Jury Waiver</u>. I waive my right to trial by jury in any action, proceeding or counterclaim in any way connected with this Agreement or the Plan.

31. <u>Survival of Seller's Obligations</u>. You shall have no obligations under this Agreement or the Plan after you deliver to me the deed to my Unit unless this Agreement or the Plan specifically gives you an obligation after that time.

32. <u>Captions</u>. The captions in this Agreement are for convenience only and are not part of the meaning of this Agreement.

33. <u>Plain Language</u>. I have read this Agreement and understand it. Under New York law (General Obligations Law Section 5-702), I know that as a consumer I have a right to an agreement written in clear and simple language.

| First or Sole Purchaser: | Second or Co-Purchaser: |
|---|---|
| */s/ Richard D. Meadow* | |
| Signature | Signature |
| | |
| Richard D. Meadow | |
| Name (typed or printed) | Name (typed or printed) |
| | |
| 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 | |
| Social Security (or Federal ID) Number | Social Security (or Federal ID) Number |
| | |
| 85 East End Avenue. Apartment 8D | |
| Address | Address |
| | |
| New York, New York, 10028 | |
| 5/30/08 | |
| Date | Date |

ACCEPTED:
Fifth on the Park Condo, LLC
By: Fifth Equities LLC
By: *[signature]*
Member/Officer
Date: 6/12/08